**Commonwealth v. Cooper**

*Willard S. Curtin*, district attorney, for Commonwealth.

*David A. Clarke*, for defendant.

KELLER, P. J., April 4, 1952.—This is an appeal from a summary conviction of defendant for the violation of the Fish Law of May 2, 1925, P. L. 448, its various supplements, amendments, and rules and regulations promulgated under and by the Fish Commissioner with the approval of the Fish Commission.

Under section 1 of the amending Act of April 13, 1949, P. L. 432, 30 PS §20, providing for closed seasons, all fishing was prohibited between March 14th and 5 a.m. on April 15th in any year, "except in rivers, ponds and lakes not stocked with trout and in streams emptying into Lake Erie within the confines of Pennsylvania from the mouth of the stream in a southerly direction to State Highway Route No. 5, a distance of approximately one-half mile. For the purpose of this paragraph, a person shall be deemed to be fishing if he shall have in his possession any fishing line, rod or other device which can be used for fishing while on or in any water or on the banks of any water where fishing is prohibited."

In pursuance of the authority vested in him, the Fish Commissioner, with the approval of the commission, by order of March 10, 1950, promulgated a rule and regulation prohibiting all fishing in any water from midnight March 14th to 5 a.m. April 15th, except in rivers, lakes or ponds not stocked with trout. This rule and regulation appeared in the Summary Fish Laws of 1951, page 4, under the heading of "special notice", together with the penalties for violating any of the rules and regulations, which were set forth therein on page 11.

The essential facts involved in this appeal are not in dispute. On April 7, 1951, while defendant was fishing in a small pool of water formed in the Delaware River Canal basin, immediately in front of her home and business establishment known as the "River House" near New Hope, Pa., she was hailed by a person she did not know, who called from his automobile and told her to stop fishing. Not knowing the identity of the person in the automobile, who it developed was a fish warden, she asked him what she was doing that was wrong, that she had a license and requested him to come over and tell her. The warden accordingly went to defendant's premises, asked to see her license and, instead of explaining and informing defendant of her alleged violation as requested, he took her name and number and, without more, left her premises. About 10 days later, defendant received a notice to appear for a hearing before a justice of the peace at Edison, Pa., approximately 12 miles distant from defendant's residence, before whom the warden had lodged an information, charging defendant with having maliciously and unlawfully violated the rules and regulations of the Pennsylvania Fish Commission by fishing during a closed period in the Delaware Canal. A hearing was subsequently held on April 20, 1951, after which the justice adjudged defendant guilty of "fishing in closed water during the closed period after March 14th and before April 15th, 1951, in water other than a river, a lake or pond, as described by the Pennsylvania Fish Laws," and imposed a fine upon defendant of $20 and costs of $5.50, from which judgment defendant took this appeal.

A "canal" in the ordinary acceptance of the term is an artificial channel or trench constructed for the purpose of conveying water, usually for the purpose of transportation or navigation. The term "canal" is

unlike the terms "river," "pond," "lake," and other words used to designate natural bodies of water, the ordinary meaning of which is confined to the water itself, in that it includes also the banks, and has reference rather to the excavation or channel as a receptacle for the water. A canal has also been defined to be a navigable public highway of a peculiar kind: 12 C. J. S., §1; Warn v. Easton and McMahon Transit Co., 2 N. Y. S. 620; Barnett v. Johnson, 15 N. J. Eq. 481, 485. It has also been described as "an arm of the sea." New Standard Dictionary.

The canal in question, known as the Delaware River Canal, was originally created and constructed as an artificial channel for the purpose of transportation or navigation and was formerly owned and operated by the Lehigh Coal and Navigation Company, principally for the transportation of coal and other products from the mining regions, along the Delaware River. It is no longer used as such and is presently owned and maintained by the Commonwealth of Pennsylvania. This canal may properly be regarded as an artificial arm or channel of the Delaware River because it receives substantially all of its water from that river at or near Easton and by means of various intakes from the river, at divers other places along its course, and discharges the same again into the Delaware River at or near Bristol.

Although the act and regulations promulgated thereunder are very broad and inclusive, they are, nevertheless, somewhat ambiguous in their application. In the absence of any other sources of water supply we would be strongly inclined to hold that this particular canal did not come within the classification of an inland stream as contemplated by the act and regulations aforesaid. On the contrary, we would regard it as an arm of the Delaware River which, admittedly, is ex-

cluded from the provisions of this act. There was no evidence whatsoever of any water, other than that entering from the Delaware River, being in this canal. However, inasmuch as we are familiar with this canal for its entire distance, we cannot refrain from taking judicial notice of the fact that along its course a number of small brooks or streams empty therein at various points and, for that reason alone, we must construe it to be such an inland water as comes within the purview of the act and regulations and, therefore, must declare defendant to have been technically guilty of the offense with which she was charged.

Notwithstanding this conclusion and decision, we hold no brief for the manner of enforcement pursued in this case. For several years there has been no water in the canal basin to the north of defendant's property for a distance of approximately 10 miles. South of defendant's property, the canal has been partially filled with water, receiving the same by means of a feeder or intake from the Delaware River, the water of which enters the feeder at a point several hundred yards north of the River House and flowing in a southerly direction enters the canal basin immediately south of the River House. Some of this intake water finds its way toward the north and forms a pool in front of the River House. It was in this pool that defendant was fishing at the time she was hailed by the fish warden and told to stop. Since the water forming this pool came from the Delaware River, in which it is permissible to fish, it can readily be understood why defendant was unaware she was violating any fishing law or regulation. This is supported by the fact that she asked the fish warden what she was doing that was wrong. Defendant is an eminently respectable person. She asked a civil question and was entitled to be extended ordinary courtesy by the public official in the form of a civil answer, which she did not receive.

While ignorance of the law or regulations established by the Fish Commission may be no excuse, nevertheless, we feel it was incumbent upon the warden, a public servant, in the exercise of ordinary courtesy, to have informed defendant of the offense which she was alleged to have violated, instead of merely taking her name and number and then, abruptly, leaving the premises and lodging an information before a justice of the peace residing about 15 miles distant, notwithstanding there are a number of competent available justices in the immediate vicinity where defendant resided. We are fully aware that in the absence of statutory regulations, a justice of the peace has criminal jurisdiction throughout the county and, also, that by the Act of May 2, 1925, P. L. 448, 30 PS §271, providing for the enforcement of fishing laws and regulations, fish wardens are authorized and required to apprehend and arrest and immediately take any persons guilty of any violation before any alderman, magistrate or justice of the peace who shall forthwith hear and determine such charge in the manner therein provided. Nevertheless, it seems to us to indicate an abuse of process when a warden institutes a prosecution before a distant justice or magistrate rather than before a justice in the vicinity in which the offense occurred, as was done in the instant case. It often creates an unnecessary inconvenience and hardship on defendant and gives rise to suspicion as to the reason therefor. It is this kind of enforcement of which our citizens very properly disapprove. In this case a little courtesy on the part of the warden might have avoided this prosecution, which we regard as having been unnecessary, under the peculiar controversial circumstances.

And now, to wit, April 4, 1952, for the reasons hereinbefore stated, we must declare defendant technically

guilty of the offense with which she is charged and, therefore, the appeal must be discharged. The costs are to be paid by defendant.